Number 191087, United States v. Antonio Torres-Santana. Good morning, your honors. I invite us appearing on behalf of the defendant appellant, Mr. Antonio Torres-Santana. I think you need to speak up louder. Oh, I apologize. May I please reserve two minutes for rebuttal? Yes. Thank you, your honor. The right to a speedy trial is one of the most sacred principles of our criminal justice system. A corollary to that principle is the notion that justice delayed is justice denied. And that is what this case is about. In May of 2015, Mr. Torres was arrested by state authorities after he reportedly sold drugs to an undercover Puerto Rico police officer while in federal supervision. Mr. Torres, the following year, pled guilty to a lesser charge. However, Mr. Torres did not have the benefit of a final revocation hearing on those allegations until December of 2018. Could you just spell out the prejudice issue and why there was prejudice from the delay? Yes, your honor. I will gladly address that. And the main point to make about that is that the unreasonable delay in holding the final revocation hearing impaired Mr. Torres's ability to mount an adequate, competent defendant to defend against those charges. Specifically, the delay caused that the undercover Puerto Rico police agent to whom he allegedly sold drugs became absent from the jurisdiction. And that is the only witness who had firsthand knowledge of this conversation and of this drug transaction. Counsel, what was at issue here was not he acknowledged that he had violated supervised release. This was all this was a sentencing determination, right? Yes, your honor. Right. And so, I mean, the rules are quite clear that for sentencing purposes that hearsay is permissible. But the issue is really the reliability of the evidence that the court relies upon here. And I understand that the supervisor of the officer testified. And wasn't there an affidavit that was submitted? Yes, there was an affidavit. The district court, however, explained that it was not going to be relying primarily on the affidavit. And let me just address the issue that your honor pointed to just now, the fact that Mr. Torres had pled guilty in state court. However, that guilty plea without more does not support a distribution charge. He was charged originally under Article 401. And then he eventually pled guilty to a reclassified Article 406 offense under the Puerto Rico Constitution. Sure. His conduct was at issue, not the conviction. But, again, given the evidence that was before the judge, the testimony from the supervisor and the affidavit, why? Plus the video. Wasn't there a video as well? Right. Yes, your honor. Exactly. So why? Why isn't that more than enough? Well, the video shows some kind of transaction. And we simply do not know anything more beyond that. And the reason we don't know is that it lacks audio. The only thing that the video shows is an exchange of money, a very brief, I think the court described it as a two- or three-second interaction between Mr. Torres and this undercover agent. And so without that audio, it only tells us half the story. But I guess, is it fair to say the district court, do you think the district court's ruling can be read to make clear that it would have come out the same way even if it put aside the affidavit, just on the basis of what the supervisor testified and what the video showed? Well, the problem with that, your honor, and I think is that we have to go a couple of steps before that. I think the district court relied on the video and the affidavit and the supervising agent because there was no, the undercover wasn't there to testify at that hearing. But why do you need the undercover? In other words, suppose all they had was the supervisor and the video. Wouldn't that be enough to support the district court's finding if there's nothing against it? No, no, your honor. And the reason for that is, well, if I can just go back to my previous point, is because the reason that the undercover isn't there is due to this unreasonable delay that occurred in this case. I think I'm not making myself clear what I'm suggesting. You need to show prejudice. The prejudice has to go to the finding the district court ultimately made on the record. It would be one thing if the, I could see if the district court relied solely on an affidavit from an undercover agent who was not there. You might say, well, we never had a chance to challenge that and that's the only evidence that supports it. But, in fact, as I read the district court, it concluded that the video and the supervisor provided a basis. You then want to say, well, we might have been able to undermine that if we could have cross-examined the undercover agent. But we don't know. That's speculative. There's nothing in the record that indicates what the undercover would say. Your client was a party to that conversation. There's no representation about what his side of the story was, why it would be exculpatory, and that it was likely that the undercover agent would corroborate that story. So what we have is evidence that in and of itself is sufficient to support the finding, at least it seems to me, which would be the video and the supervisor's statement. And then a speculative contention that maybe the undercover officer, if they were there, would have provided such damaging testimony to the government's case that that other evidence wouldn't be sustainable. That seems like a relatively speculative prejudice argument. But the reasoning are that Mr. Torres perhaps struggles to show prejudice is because so much time has gone by, the witness wasn't present, so we couldn't really. Well, he knows what happened in that conversation. Right. But the burden is not on him to put on the evidence. And so without that right to cross-examine, to expose bias and motive and credibility, Mr. Torres essentially just faced a revocation without any guarantees here. So what about the fact that he didn't ask to have the witness subpoenaed when the witness didn't show up and didn't ask for a continuance to allow the witness to appear? Right. Mr. Torres, yes, as Your Honor correctly points out, he did not have the witness subpoenaed. And I think at the hearing, the defense counsel totally caught him by surprise. It seems from a reading of the transcript that everybody else at the hearing, including the district judge, knew that the undercover agent wasn't going to be there. Moreover, I doubt that if the defense had attempted to subpoena this particular witness, it would have been successful. The agent was off on some other undercover assignment, so I'm not sure that that would have been any kind of fruitful attempt. And, again, it also could have been. Can I just ask, I have to acknowledge there's something about your brief that troubles me. It seems to me without any authority, you attempt to argue that the period for measuring unreasonable delay begins back in May of 2016 when probation filed a petition noting that your client had now been sentenced on these state charges. When the law is, I would say, abundantly clear that you do not begin to measure the period of delay until your client actually is in federal custody. You don't seem to acknowledge that at all, and so the premise of your argument seems to be completely unsupported by the law. I have to acknowledge that it sort of troubles me that you don't acknowledge what the abundantly clear law seems to be. And if I could just address that, Your Honor, I do apologize for not making it more clear. We do acknowledge that it's from the time that the defendant is arrested. The reason we point to the- So we're talking eight months, not 30 months, is the period of delay. Do you acknowledge that? Well, the government, I footnote, 10 of its briefs notes that Mr. Torres may have been in federal custody as early as February of 2018, so it's between eight and 10 months. Moreover, the docket for this case does not reflect when the arrest warrant was executed. So it's within that eight to 10-month period. And just very briefly to address your other points, the reason that we point to that May 2016 period does not go- It goes more to the reasonableness of the delay, like the surrounding circumstances, and not that that was the relevant period that we had to look at. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Josh Handel for the United States. I'm happy to discuss what we think the relevant time period is under Rule 32.1. I think it will come as no surprise that we agree with Judge Lopez that it is the period of federal custody. Given the Court's questions so far, I'm happy to jump directly to prejudice. Could you clear that part up for me? So the earliest date would be 30 months, right? Yes, as Mr. Torres- Then there's a 19-month date potentially? Is that from the show cause or what? So, candidly, I'm not sure what that date is measuring from. I mean, I think we have a couple of relevant dates here, and I guess I can point those out for the Court. So the Probation Office files an informative motion in June of 2016, notifying the Court about Mr. Torres' conviction. In April of 2017, the District Court issues a writ of habeas corpus ad prosequendum to the state authorities to produce Mr. Torres. And then the next relevant date that we have is Mr. Torres being brought into federal custody in April of 2018. So I suppose perhaps the 19 months is measuring from the April 17, 2017 issuance of the writ of habeas corpus ad prosequendum. There's no indication that Mr. Torres was aware of that. And, in fact, I believe he's represented that he was not aware that that issued. So I have no idea how that could be relevant to any of the due process considerations here. Certainly he wasn't experiencing anxiety from a pending supervised release revocation hearing that he was not aware of at that point. So we certainly measure the relevant period here as being from April of 2018 until December of 2018. But I do want to get to prejudice right away because I believe the Court was interested in that. On that point, Mr. Torres has asserted two forms of prejudice, neither of which I think avails here. So, first, he argues that he was hamstrung in putting on a defense because of the unavailability of the undercover officer. I'm sorry, just to go, I'm just thinking of the, there's a suggestion made that the existence of the charge on the revocation impedes the ability of somebody in state custody to be able to get parole under state law because there's a federal detainer out. On your view as to when the clock starts, does that mean that that kind of argument can never work because the person must be in federal custody for the clock to even start? I don't think so, Your Honor. So I think in a different case with different facts where you didn't have an admission that a violation had occurred, an admission or a concession that revocation was appropriate, and, you know, parties just fighting over how long the sentence was going to be, then perhaps you would have a situation where a state prisoner was brought into federal custody for the purpose of adjudicating his supervised release violation allegation that he was contesting, and because he was in federal custody for that period, he missed out on a window of state parole that would otherwise, you know, that would have otherwise been available to him. I think that that would present a different situation to this court. Now, that defendant... I'm asking something different, which is just when you're in state custody because you, and that has triggered the violation then of the terms of the supervised release, so that that could, in theory, right? You commit some state offense, and then that's the cause of the revocation proceeding. Yes. The basis for the revocation. The federal government takes some action to make known that they are now aware that there's been a state violation, and that's going to trigger the revocation. Correct. But you're still in state custody. Okay.  That whole time my understanding was the contention is that the person in state custody is prejudiced by that because so long as that federal charge is out there, that impedes their ability to get parole in the state system. If I'm understanding you, that argument, there is no prejudice because you're allowed to have that federal charge hanging out against you with no action on it all the way until they suddenly bring you into federal custody. So even though it's having a potentially detrimental effect on your ability to get relief in state court, tough luck. Is that your position, or is there some way around that? Right. So, Judge Barron, two points in response to that, and I apologize for not understanding the hypothetical before. So, first of all, I think that that would be a tough sell under this Court's precedent and Supreme Court precedent. So I think we can look at Pagan-Rodriguez where this Court addressed a similar argument that the federal district courts delay in adjudicating a supervised release violation prevented a state court from running a defendant's term concurrently with his federal sentence. And this Court said that a speculative opportunity to request leniency in the manner of discharging a state sentence is not legally cognizable prejudice. Counsel, in this case, there is no evidence that this pending probation revocation had any effect on his ability to obtain parole in the state system. Isn't that correct? I mean, that is cited as a possible form of prejudice, but there's no evidence in this case that that happened. Isn't that correct? That is absolutely correct, Your Honor, and that brings me to my second point, which is even assuming that he would have been eligible for state parole had it not been for the federal detainer, and even assuming that the loss of that eligibility would constitute legally cognizable prejudice, Mr. Torres can't get around the fact that he had- No, I understand that. I'm just trying to figure out whether it matters in how we analyze the issue when we start the clock. Because if we don't start the clock until you're actually in federal custody, then even if it was not speculative that the pending federal revocation charge might have a detrimental effect, it wouldn't matter. Because the clock, considering delay, only begins when you're actually in federal custody. So I'm just trying to figure out, is the government's position that the clock must start when you're in federal custody? Because that cuts off any inquiry into the potential effect of the delay on the person in state custody. Or are you saying, well, maybe the clock could start at some point earlier than actually bringing the person to federal custody? So the government's position is that there has not been a deprivation of liberty by the federal district court until the defendant is in federal custody. I don't think it's strictly necessary for this court to reach all of these hypothetical issues and decide for any and every case when exactly the clock starts. Because I think there is absolutely no form of prejudice that Mr. Torres can demonstrate. Even if you started the clock somewhat earlier than the eighth month? Absolutely, Your Honor. There's no prejudice in terms of his evidentiary argument. There's no prejudice in terms of parole. And I just want to get a little bit further on the parole piece, because here there was no dispute at any level, or at any point below, that Mr. Torres had violated his conditions of supervised release and that revocation was appropriate. As I said before, the only disagreements in the district court were as to the grade of his violation and the length of the resulting prison term. Which means that even if Mr. Torres' supervised release violation had been adjudicated right away, back on the heels of his state conviction in mid-2016, he would still have been subject to a federal detainer for service of his consecutive federal term following completion of his state term. Well, he would have had to go back and finish his state sentence, right? Exactly, as he did here. He went back to the state facility, finished out the remainder of his state term, and then he was transferred directly to federal custody for service of his consecutive federal term. There was no parole possibility here. It wouldn't make sense for there to be a defendant cannot be released to the custody of a state parole officer and serve his parole and satisfy his state parole conditions while he is incarcerated by another sovereign. So, at the end of the day, the only conceivable deprivation of liberty. Mr. McHale. Yes. Just want to be sure, you may have made an interesting point there. If he was facing clearly the sentence, any sentence imposed under these circumstances would have to be a sentence consecutive to the state sentence, correct? I don't know that it has to be, but under Guidelines Section 7B1.3F, the district courts are instructed to impose a consecutive sentence, yes. So, if that's the case, the notion that one could, what, get parole on a state sentence, be at liberty under parole conditions, but then subsequently be incarcerated to meet the consecutive sentence requirement, that would be very odd, would it not? I see my time is about to expire. If I could respond to the question, yes, I agree, it would be exceedingly odd. That's exactly the observation that the Supreme Court made in Carchman v. Nash, which we cited on page 47 of our brief, that where you have a federal detainer in this kind of a situation, it doesn't really matter for the purposes of parole when the violation is actually adjudicated, because what you're going to have is just one federal detainer, the detainer for adjudication of the supervised release violation, being exchanged for another federal detainer, the detainer for service of the consecutive federal sentence. Well, maybe I missed something, and I don't know that it matters, but I just want to make sure, in analyzing this, we don't create a problem that we didn't intend to create. But, Judge Lepez's hypothetical, we all agreed, resulted in an odd circumstance. It sounds like the Supreme Court thinks it's odd, too. But the obvious reason it's odd doesn't mean it's not happening. So is it your understanding that that is what would happen, that there would be a period where you could be paroled from the state and then you would then go to the consecutive federal? Or is the suggestion that, although the guideline indicates it has to be consecutive, it really doesn't have to be consecutive to the parole sentence? So I apologize if I was not clear there, Judge Barron. My position is that that would not happen, that the state prisoner would not be released on this sort of, like, interstitial parole period, that the federal detainer would serve to acquire the state prisoner directly from the state correctional facility and bring him into the federal correctional facility at the conclusion of his state sentence. And that's why the state prisoner would not be eligible for parole. Unless the Court has further questions. Okay. Thank you. I would be glad to entertain any other questions that the Court may have. Otherwise, we would rest on our briefs, Your Honors. Thank you. Thank you, Your Honors. We're going to take a recess. All rise.